On behalf of the appellant, Ms. Amanda Morrissey, on behalf of the appellee, Mr. Eugene Rebnik. Closet is ready to proceed. You may proceed when you're ready. Good morning, Your Honors. Amanda Morrissey on behalf of Appellant's Group, LLC. We are here today to request this honorable court to reverse the circuit court's finding of improper service on Nicolette Fluber, on the basis that such finding was against the manifest weight of the evidence, as the opposite conclusion is clearly evident from the record. And second, to reverse the circuit court's grant of Fluber's, appellee Fluber's, motion to quash the petition for tax deed and denial of said petition, on the basis that Sabre did actually comply with the property tax code, and should be able, therefore, to move towards tax deed and have its petition reinstated. The circuit court's decision that Ms. Fluber satisfied the clear and convincing evidentiary burden necessary to impeach the sheriff's return was against the manifest weight of the evidence. In order to be against the manifest weight of the evidence, it needs to be clear from the record that the opposite conclusion is true. We contend that from the record in this case, the opposite conclusion is true. I just try to break it down in a simple structure here. Sure. The legal principles are clear. The court is supposed to indulge every presumption in favor of the service. Correct. Going in and officer, Deputy Gomez testified, he personally served the respondent. It was an affidavit of some specificity. We also know that a defendant's uncooperative testimony that he or she did not receive service is insufficient to overcome a presumption. Correct. In this case, you have some other competing interests. You have a number of individuals testifying. It wasn't simply the uncooperative testimony of one person. Correct? There was the respondent and a bunch of family members. Is that correct? Well, that is correct, Your Honor. And we are contending, though, that while that, you know, corroborated evidence does satisfy the clear and convincing burden, here there was no such corroborating evidence. And we have three principles on the basis of that. One, that the first element that Appellee is arguing as corroborating evidence is the affidavit and testimony of Ross Flumer, who is also, Your Honor, a co-owner of the property. I understand they're all related. It isn't simply testimony of one individual. There were several individuals. Correct. And it is also intended that Danielle Hannon, Kyla Fluger, her daughter, Danielle Hannon, her sister, and her father even admitted that they have no idea as to where Ms. Fluger was as of the date and time of question. And that's evident all throughout their testimony. In fact, in the affidavit of Mr. Robert Hannon, he actually admits that he had no knowledge as to where she was as of the time of question. Who decides questions of credibility in the way to be given to the evidence? Is it not the trial court that makes the determination? It is. It is, Your Honor. And the trial court here found them credible, did it not? He found them credible. However, Your Honor, and while they may have been credible, their testimony was irrelevant in this instance. How could it be irrelevant? Because they were unable to provide as to where Nicolette Hannon Fluger was as of the time of date of service. Did they testify that she was not living there and could not have been served? Well, Your Honor, she wasn't living there. However, in Four Lakes Management, this court actually decided that the fact that the defendant was not living at the property had no bearing on whether or not she was served at that same property. Let me ask this. What should this court do when we're confronted with an argument out of a statement of facts? Page 12 of your brief, you make the comment that the description of the challenger of the conversation was an impossibility. What do we do about that kind of argumentative statement of facts? I'm sorry, Your Honor. I don't understand the question. Page 12 of your brief, what should the court do when confronted with an argumentative statement of facts? Well, Your Honor, we are trying to acknowledge or bring light to the court that the testimony that was provided at trial was, one, irrelevant, and two, it was not corroborating evidence. So that's what we were trying to bring in light to the court. Doesn't that belong in the argument section of your brief and not the statement of facts? Yes, Your Honor. It would be an argument that might as well be taken. But here's the question that's troubling me. You seem to be saying cooperation can't come from family members. Well, Your Honor. Because they're all family members. Well, no, that's not necessarily true. You know, in all the cases that we've researched and we've presented, in a majority of the cases when there was only familial testimony, such as in Whitworth and Four Lakes Management was just her, but in Fox, there was this tendency to not, for the court to find that there was not sufficient evidence to satisfy that clear and convincing evidentiary burden. Well, at this point the court did. You almost seem to be saying, if you take your argument out to its logical extension, that if the only people who can testify, the only people of any knowledge of this are family members, you could never overcome the presumption of service because all you have are family members. And you're implying that's not cooperation. In this case, it's not. That's what we're trying to say. Well, how would it be in any case? If all you have are family members, how would it ever be cooperation under your analysis? For instance, in the present case, if you have family members, other than somebody who has a clear interest in the property, is if you have a family member saying, she was with me as of May 19th at 10.15 in the morning where Defendant Nicolette Hannon was served, or allegedly served. For instance, in the testimony in the case, that was a big week for the Hannons as they were preparing to go to the Mayo Clinic. And even according to testimony of Robert Hannon, there were many doctor's appointments. There was not one piece of substantiating evidence that Ms. Pfluger, who was allegedly responsible for taking her family members to the doctor appointments and running errands and basically taking care of them, there was no garage receipt, no testimony of a doctor saying that there was an appointment, there was no doctor letter, there was no appointment card, there was no... Justice Hudson's point is, that's all credibility questions. I mean, those are arguments that you would have made to the trial judge, and it was Judge Colwell, then accepted your argument, reviewed the evidence and said, my job to make a decision on credibility, in spite of all your arguments of the absence of paper corroboration, and these are family members, said, you know what, I think it meets clear and convincing. And so the question is, aren't these really credibility issues? Actually, Your Honor, they would generally be. However, in this case, it's not, because we're contending that you don't necessarily have a credibility issue in this case, especially with Kayla Pfluger, with Danielle Hannon and with Robert Hannon, on the basis that they were unable, completely unable to testify as to Nicolette Hannon Pfluger's whereabouts as of the time and date of question. In other words, they did not rule out the possibility in the prima facie proof of service. Correct. And you're suggesting that some other form of corroborating evidence, like a receipt, like a telephone record, like some credit card receipt showing that she was elsewhere, that would have been clear and convincing evidence, then? Yes, Your Honor. Actually, in Robbinswood, the court actually found that the sheriff's affidavit was impeached on the basis of a hotel bill that was supplied by the defendant. But doesn't the law, again, picking up on that theme, run head on into the credibility assessment of the trial court? Isn't it up to the court to decide what is sufficient corroboration based on credibility? Do we assign as a matter of law, unless you have some independent evidence, receipts, documentary evidence to support the family testimony, that the service could never be overturned? Well, no, Your Honor, we're not saying that. What we're saying in this specific case, that due to the lack of testimony by the family members, specifically Kayla Fluger, Danielle Hannan, and Robert Hannan, as to where the defendant was as of the time and date of service, that it would need to always be bolstered by some sort of corroborating evidence stating that she was someplace else. We're not saying that family members are not able to testify. We're saying that sufficient corroboration is not testimony that simply says she wasn't here where the alleged service took place. But rather, they have to testify to be sufficient corroboration that she was somewhere else. She was in Indiana. She was in Michigan. She was at her daughter's school. You have to put her somewhere else. It's not sufficient to just say she wasn't at the location of the service at the time and date in question. No, Your Honor, that's not our tenant. Actually, our tenant is principally that they could not even testify as to where she was. So they didn't testify that she was not at the property. Kayla Fluger testified that she didn't know where she was because she was at school that day. And Danielle Hannan testified that she was at the house but gave no testimony as to, you know, whether or not she had even made a stop or – it was just basically – How far away are the homes from each other? Your Honor, I'm not sure about that. Counsel, you said you don't need to put them somewhere else, but that's exactly in your recitation what you said. You went to the witnesses and said they couldn't put her somewhere else. Well, they couldn't put her at the – they testified that they had no idea as to where she was. Except she wasn't there. Actually, Kayla Fluger said that she didn't know where she was. Robert Hannan, even in his affidavit, said he had no idea where she was as of the time and date of service. Did they also say that they were at the place of service? No, they did not say that they were not at – they were not at the place of service, and they attested to that. Is service on the husband – does that fulfill the statute because he's co-owner? Oh, pursuant to 2215, yes, Your Honor, it does. And why is that? It's because the 2215 actually states that if any owner – if a property owner cannot be found, then basically it's not substitute service, but owner-occupant is sufficient. Also, according to Mary Lowe, which is an Illinois Supreme Court case, actual – you know, we do have personal service here. We are contending that strongly. But even if there's not personal service in situations when there's not personal service, personal service is not necessary so long as the tax buyer made a diligent inquiry and attempt to actually serve, which we are contending in this case that the Sabre Group, the appellant, did actually fulfill all the requirements of the property tax code in terms of its diligence. Counsel, did the deputy sheriff testify that he personally served and remember personally serving? No, Your Honor. He did not testify that he remembered personally serving her. He testified that he was convinced that he did serve her because he would not have signed the affidavit of service indicating that he had served her had he not. Now, there is also case law indicating that the failure of the sheriff's deputy to remember all the details of the service – Does not fail, right? Correct. It does not fail. And that's actually FOX equipment, if I'm not mistaken. Challenger argues that the date of birth that he put on, he could have found that date of birth. The date of birth. Yes, Your Honor, he could have. However, he filled out the same information on Ross Huber's affidavit, who admitted service. So the same information that he had filled out for personal service on Ross Huber was the same that he had filled out for Nicolette Hannon. And he put the date of birth on both. He put the date of birth on both. Which, presumptively, he got from them. Correct. Counsel, how do you respond to this argument? You're asking us to substitute our judgment, our assessment of the credibility of the witnesses for that of the trial court. But, Your Honor, we're not. We're basically asking this court to rule that on the manifest weight of the evidence that the trial judge, that the opposite conclusion was clearly evident. I'm sorry. I probably butchered that statement. I do apologize. No, that is. The ruling is contrary to the manifest weight of the evidence where the opposite conclusion is clearly apparent. That is the correct answer. Okay. Yes. Thank you. I think tying the net in the mix again is troubling. Is the court's credibility assessment a key factor? And, Your Honor, we're not. We agree. The trial court is actually the primary trial effect. But what we're saying here is that there was not evidence as to Ms. Pfluger's whereabouts that was sufficient enough. So while she had Ross Pfluger, she had Kyla, she had Danielle, her sister, she had Robert Hannon, out of those four witnesses, the only person, including her own testimony, who testified that she was not at the property location at the time of date of service, was her husband, Ross Pfluger, who was also a co-owner and who was, of course, interested in the party. And many courts have held in these circumstances where there's especially, you know, unfortunately, when there's a family member who also has an interest in the property, that that is just clearly not sufficient evidence to impeach a sheriff's return. Now, again, the testimony of Kyla, Danielle, and Robert Hannon all testified to the fact that they didn't know where she was at the time and date of question. They could not attest to it. So what we're saying out here is that it was not credible. They very well may have been credible. Unfortunately, they did not testify to the fact of where Ms. Hannon Pfluger was at the time and date of service. I thought you said earlier they didn't have to testify as to where she was. Correct. But they didn't know actually where she was. So they couldn't even attest to the fact that she was at the time she was there or she wasn't there. They actually gave no substantiating evidence other than the fact that, you know, she was running around, running errands for her family, upon which she was unable to provide any sort of substantiating documentation. So bottom line, you're saying the witnesses couldn't say she wasn't where the police officer said she was. Correct, Your Honor. And given the presumption that's afforded to the sheriff's affidavit, we feel that that makes the record completely opposite to the trial court's finding. In other words, it's not a numbers game, the number of witnesses. It's whether or not any one or more of those witnesses is corroborated. Correct. It's quality versus quantity. Your Honor, I believe I'm out of time. Are there any more questions? You'll have a chance for a reply. Thank you, Your Honor. Counsel, you may proceed. Thank you, Your Honor. The burden on the appellant is twofold. One, to convince this court that Judge Caldwell's finding that Nicolette Hannon had produced clear and convincing evidence sufficient to overcome the sheriff's affidavit was against the manifest weight of the evidence, or constituted an abuse of his discretion when Judge Caldwell in his ruling clearly stated that his finding of clear and convincing... Let me stop you there. Yes. We don't want to co-mingle abuse of discretion or manifest weight. They're two different standards. All right. I think it's manifest weight that's better. Manifest weight is fine. But we cannot say that Judge Caldwell's finding was against the manifest weight of the evidence when it was based upon his observation of the witnesses, his determination as to their credibility, and he made that clear in his remarks in his ruling, that that's how he ruled, that's what he found, and that it satisfied the clear and convincing standard. Secondly, Sabre Group must also prove to this court that they strictly complied with all the provisions of the property tax code, which we submit they did not. With respect to... What provisions did they not comply with? Well, they did not, when they take their fallback position, that service on Ross constituted statutory service on Nicolette, they did not... They cannot show that they exercised due diligence, due inquiry, and effort to locate Nicolette. After all, they submit that she was actually at the property, but now they're trying to say, well, service on Ross was sufficient service on her, and that's not the case. Can you have successful service and still found not to be diligent? Can you have successful service and still not to be... How can you fault the petitioner when they had the sheriff's affidavit? Well, they're making the argument that notwithstanding the sheriff's affidavit, they also served the co-owner. Pardon me? The co-owner, Ross. The co-owner, and that was sufficient, but that's not sufficient under the property tax code. But an occupant, if you can't find the owner serving an occupant, is sufficient, correct? Under the property tax code, there are three manners in which the owner is to be served. One is by personal service, if that owner resides at the property, which was not the case here. Nicolette resided elsewhere in King County. Number two... Was that in the public domain? Did she change her driver's license? Did she... There's no evidence to that effect. So that was still her legal address? The home was still her legal address? I believe so, at least according to whatever public records they searched, the title report or whatever else. And you're not claiming that they didn't do a diligent search? I am claiming that they did not do a diligent search in that their efforts to contact the where Ms. Hume, their agent, knocked on the door, nobody answered, and that was the extent of her diligence to go and advise these folks that they're at risk of losing their home. She didn't make a second follow-up visit to the home. She didn't make a phone call to the home, although she had whitepages.com information. She didn't go to a neighbor's house to see who lived at the property. None of these extra efforts were made that would demonstrate diligence according to case law. There was also the return of a certified mail of the take notice that the clerk of the circuit court was required to make, and it was returned undelivered, unable to forward. Diligence, we suggest, would have at least caused them to ask the post office, what do you mean by unable to forward? And maybe by making that inquiry, they would have learned that it was unable to forward because the forwarding order had expired due to the fact that Nicolette had not resided at that property for three and a half years. So, I think diligence requires more than one visit to the house and a knock on the door that doesn't get answered. They had to find out who occupied the property, if the owner occupied the property or not. And they just assumed that it did, based upon information. Obviously, you're arguing that service on one co-owner who may be occupying the property is not sufficient service on the other co-owner or party. Is that correct? Is that your argument? That's what I'm arguing, yes. Did you make this argument to the trial court, or did the trial court rule on that issue? That argument was not made to the trial court. The first time it was raised was in the Sabre brief, that even if the affidavit was false, nonetheless, service on Ross still constitutes statutory service. So, the parties did not address it in the trial court below? That is correct. Is the argument waived? Is it forfeited? I think this is a matter of law, and so I don't believe that it is necessarily waived. I think the argument could be made that it was not waived because it is a matter of law and of statutory interpretation. But it would, in effect, result in a finding that the affidavit of the sheriff was false. And that could be fatal to them as well, because they've been relying upon this affidavit as evidence that Nicolette was served personally at the property on May 19th of 2010, when, in fact, she was in our position was not. Discuss the Ford v. Continental Illinois National Bank of Trust, that the service, the uncorroborated testimony of the defendant is insufficient. In this case, you have uncorroborated testimony in terms of documentary evidence. You don't have any receipts. There's no appointments. There's no letters. How do you distinguish this case? There is nothing in this case specifically to that minute on May 19, 2010. We submit that there is corroborated evidence. You say there's nothing regarding that minute. You do have the sheriff's affidavit, which is what you have to show is false by clearly convincing evidence. Correct, Your Honor. We submit that the corroborating evidence, which is evidence that tends to support, evidence that tends to bolster a proposition that's already before the court. And the proposition before the court in this case was that Nicolette was not present on the day of the incident. That corroborating evidence consisted of the testimony of Ross, who said that he was the only person present when the service was made, that Nicolette was not there. He testified that he received all three take notices, which were introduced into evidence, that he placed those take notices on his desk, in his office, at the house, which is where they remained from May 19, 2010 until September 6, 2010, which was beyond the final redemption date. And that we submit, those three documents do constitute documentary evidence for he was in full possession of those throughout that time period. And further corroborated by his testimony. I'm sorry. And then beyond Ross's testimony, affidavit, and the three take notices that remained in his possession, I think the actions of Nicolette immediately following her receipt of one of those take notices on September 6, 2010, constitute corroborating evidence for the very next day, the next business day, September 6, 2010. September 7, 2010, she contacted Mr. Rochman of the Sabre Group, who corroborated that by, in his affidavit, that indeed he was contacted by Ms. Hammond, trying to find out what she could do. And what she was told, well, you better show up at court on September 8, the following day, which she did. Pro se, she appeared before Judge Caldwell, trying to find out what she could do to salvage this situation. And the case was continued on Sabre's motion until September 20. Ms. Hammond was under the impression that she had until September 20 to pay the taxes, and if she could bring in a receipt, all would be well. So what did she do? She somehow arranged to come up with more than $22,000 to redeem the sold taxes and to pay the current year's taxes. And she went into court on September 20 before Judge Caldwell and said, here are the receipts. I've paid the taxes. Counsel, how do you respond to this argument, that while the family members testified she wasn't there, all it amounted to was testimony that all we know is she wasn't there. We don't know where she was. We just know she wasn't there. And they're arguing that that's flawed, because anybody could say that. Well, it's still corroboration. She didn't, she did not reside at the property where she was allegedly served. She resided with these other family members within Kane County. And then what was going on on that particular week, they were, you know, all of them were suffering from some serious illnesses other than Danielle. And they testified that Danielle was their main caregiver, taking her to doctor's appointments, preparing them for the trip to the male clinic, as well as taking care of the animals and Danielle's daughter. And that for her to have been at 806 Buckeye Court when she was in such demand at 37W828 Jaguar Court. They're in the same town, right? It would be so inconceivable. They're both within Elgin, both within Kane County. Yeah, and Mr. Ross just left to take notices on the desk and never looked at them. That's what he said until August 31st approached and the date went by and he called Nicolette and Nicolette was coming to pick up Kayla on Labor Day. And Ross says, all right, here's one of those. See what you can do. And that's what caused her to spring into action, which is perfectly consistent with her position that she was not served on May 19th. For if she were served on May 19th, she had until August 31st to arrange to get these taxes paid. But the short testimony is in response is, hey, look, in the real world, we're looking back months later, people may know whether they're in a house, but why should they have to know exactly where she was if she wasn't at home? Is that sort of what you're saying? That's correct. Their position is that it was Nicolette's obligation or burden to prove the impossibility of service. And I think that's a little bit strong. Her obligation was to prove by clear and convincing evidence that she was not served as stated in the sheriff's affidavit. But she doesn't have to prove where she was. She doesn't have to prove where she was. She just has to prove that she was not served. And we submit based upon the corroborating testimony, the corroborating documentation and Judge Caldwell's determination as to the credibility of the witnesses that indeed she was not served. And he made that clear in his findings that he understood the standard. He understood that he based his decision on the credibility of the witnesses and so ruled. So of necessity, you're saying that the deputy sheriff must have been mistaken? The sheriff must have been mistaken. As Judge Caldwell said, It's clear to me what happened here is this process server left all the papers with Mr. Pfluger. And I think that's quite definitive. Well, did he just guess at the birthdate? How would he happen, by sure coincidence, to get the birthdate right? Judge Caldwell did not discuss that. But I think that you will find that Deputy Gomez's testimony was inconsistent and was impeached. It was inconsistent in that he testified that what he does when he serves process is fill out what's asked for. What's asked for on the affidavit and what's set forth in the statute as to what information is to be gathered is the sex of the individual served, the race and the approximate age. And that's what he did when he served the unknown parties at the clerk's office and at National City Bank. But in the case of Ross and Nicolette, he had the birthdates filled in. We suggest that he received those birthdates from some source other than Nicolette or from Ross. Why? Because if you look on the companion document called Sheriff's Return of Service, which has said something for information purposes only, it's part of the record. That document, the companion document for Ross and companion document for Nicolette, not only have their names and birthdates, but it also has hair color, eye color, height and weight. Where did they get that information? Certainly not from Deputy Gomez's affidavit because it's not required to be there. And he only writes down the information that he has and hands it in to the secretary as he testified. So we suggest that that information was already known to Deputy Gomez when he was going out to serve Ross and Nicolette, allegedly, and was able to have those exact birthdates rather than having to make a guess as to approximate age. Whereas when he went to National City Bank to serve the agent, went to the clerk's office to serve the agent, he didn't know who he was going to serve. So therefore, he just relied upon his observation as to approximate age and did not have their exact birthdates. What you just recounted is all speculation, isn't it? It is speculation, Your Honor. Yes, it is. It is speculation. It's required to produce evidence, clear and convincing evidence, not speculation, correct? That is correct, but I believe that goes to the credibility of Deputy Gomez and was likely taken into account by Judge Caldwell in his determination as to the credibility of the Nicolette did produce clear and convincing evidence sufficient to overcome the favor treatment of the affidavit. Is the deputy entitled to the presumption that he carries out his duties according to the law and his oath of office? Yes, Your Honor. We acknowledge that. If I may, I know I'm beyond my time. So is it your position in light of that presumption that he knowingly falsified this affidavit or that he just couldn't really remember who put the date of birth on there? Well, our position is that he knowingly presented a false affidavit. Our position is that in these times with so many foreclosures and other matters going on and reduced budgets and increased volume of workload, somebody got sloppy. The volume of his work? Well, did he get sloppy or did he knowingly falsify an affidavit? Well, what's your position? That he knowingly falsified the affidavit. Because he had the information. Because he had not served Nicolette. But he had and he had the information of a date of birth. If that's so, why didn't he just approximate the age as he did on every other affidavit? I mean, somebody born 1990, you approximate, you know, it's the date of birth 1990. Why not pick a consistent age? Why would he put the date of birth on there? All this is your speculation. Well, it is speculation. But we also have that sheriff's return of service that told him what the birthday was. So he didn't even have to make an observation as to the approximate age. He knew the exact age by filling in the birth date that was obtained from some other source. That's our twist on things. If I might get back to Justice Burkett about the property tax code. I think another area where the property tax code and the notice provisions were violated and set forth in our brief is the take notice that the clerk of the circuit court was The record as well as the report of proceedings of the Sabre Group show a take notice that was allegedly sent by the clerk of the circuit court that did not contain the signature of the clerk of the circuit court, which is one of the requirements under the notice provisions of the property tax code. And the case law is very clear that when a person's property is at risk through a forfeiture that the notice provisions must be strictly complied with, even as minute as it might be where a prefix to a case number was omitted. Counsel, is there a difference between the take notices attached to the pleadings do not contain the clerk's signature? What about the take notices mailed to the parties? Did they bear the clerk's signature? The take notices mailed to the parties by the clerk bear the signature of the clerk of the circuit court. And if we look at the records, C7 does have her signature. But if you look beyond C7 to where to see C9 to C31, C9 is where it is a certificate of service. This is what I served. And that runs all the way through C31. And specifically, the take notices at C11 and C12. And that those do not bear the signature of the clerk of the circuit court. How can the petitioner be held accountable for the clerk's signature when it turns in the forms and the money to the clerk to process the sign and mail forms? How can we hold the petitioners accountable? Then if you look at the Sabre Group's report of proceedings, where they're saying this is how we comply with every step of the property tax code, when you get to that area, which is C84 to C118, specifically C100 to 103, you will not find the clerk's signature on that take notice either. Thank you. Thank you very much. Do you wish to reply? I want to first address the merchantability and judicial stability arguments. This is going to the crux of most of the case law and a lot of the case law. They said that the primary tenant behind the clear and convincing evidentiary burden required for defendants to prove in order to impeach a sheriff's affidavit is this judicial stability. You cannot just have owners coming in saying, well, I didn't receive notice. Because clearly, you're going to have a self-interest there that cannot be accounted for. And that is why the law requires a cooperation. And in this case, it is clearly lacking. If we allow, or if it goes down the pipe where it is allowed that this case goes through on such uncooperated evidence, it is not going to bode well for the judicial stability and or the merchantability of tax deeds. You're going to have a very hard practicality in that a lot of tax buyers are not going to be so inclined to go forward with tax deed cases and rehabilitating these tax delinquent properties. Let's face it, all of our taxing districts need this money very strongly right now. Second, I do want to attest to the fact that the clerk did sign, as in C7, that affidavit of service, stating that they did mail it out. And not only that, I know opposing counsel did reference our pleadings, and we have not been allowed to go to tax deeds yet. So those are our report of proceedings, in which case it's not exactly proved up until that time when we hand over the report of proceedings to the judge as of that date. Given opposing counsel's motion to quash, we were not provided that opportunity, which is what we are asking this court the opportunity to do. We also would like to bring into light that all owners and occupants in this case were served, and we have the sheriff's affidavit to that effect. And the sheriff's affidavit, I know opposing counsel did mention the fact that the information was different on Ross and Nicolette as well as the occupant versus the corporate entities that were served as well, such as the Kane County clerk, such as the lender. Well, now there's clearly a differential in that circumstance, in that you have a corporate entity as opposed to an individual service. So the different information is not inconsistent and is not sufficient to impeach any sort of testimony given by Officer Gomez, who unequivocally, unequivocally stated that he served Nicolette Pfluger. Again, we are appealing to this court to find that the trial court's finding of improper service here is against the manifest way of evidence in this case. And on that basis, personal service was effectuated. We're also finding, requesting this court to find that the same group did comply with due diligence pursuant to all the case law that's been effectuated. In Mary Lowe, there was a substantial similarity between the Mary Lowe case and the present case in that there was also a returned certified mailing. And the court held that still, that despite that certified mailing being returned, that the taxpayers did the diligent effort and attempted to find the parties. In this case, we did find the parties. We served all of the parties. We served them personally and we served them pursuant to 2210 and 2225 as well as the publication. We are also, again, reiterating to the court how this judicial stability is in the crux of this case because it is very important. We can't just have homeowners coming in with uncooperated saying, oh, well, I didn't get served, therefore this court lacks any sort of jurisdiction. It's not only going to go to the merchantability of tax, of tax deeds, but it's going to spill over into other areas of law as well. And that's going to create a very, that's going to create a very big bottle effect in order to give judges the discretion when there is such a lack of cooperating. Is your argument also partially that presumptively Nicolette could have produced non-interested parties such as neighbors at both homes, possibly coworkers, people like that, and they failed to provide that type of testimony? Absolutely, Your Honor. Absolutely. I mean, we were providing that there was not that cooperating evidence, in which case that would be an example of it. I know in a lot of the cases such as Whitworth v. Morgan and what have you, there were other instances of uninterested parties coming in. Like a lawyer in one case. Correct. Like a lawyer in one case. Correct. If Your Honors are done, are there any more questions? Thank you very much. Thank you, Your Honors.